## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Kellye Strickland,

Plaintiff,

v.

Nicole Rueger, *in her individual and official capacities also known as Nikki*; Elizabeth Clysdale, *Referee, in her individual capacity*; Corina Loya, *Deputy, in her official capacity only*; Ramsey County, *a local government entity*, Barna, Guzy & Steffen, Ltd., *a Minnesota professional corporation*; Jenese Larmouth, *Referee, in her individual capacity*; Rebecca Rossow, *Referee, in her individual and official capacities*; Victoria Elsmore, *Referee, in her individual capacity*; Kyle Manderfeld, *in his individual capacity only*; John and Jane Does 5-10, *in their individual capacities*,

Defendants.

Civil No. 25-2056 (DWF/DJF)

**MEMORANDUM
OPINION AND ORDER**

## INTRODUCTION

This matter is before the Court on four motions to dismiss filed by Defendants (Doc. Nos. 18, 27, 34, 36) and several motions filed by Plaintiff Kellye Strickland (Doc. Nos. 3, 72, 93, 98). For the reasons set forth below, the Court dismisses Strickland's claims against Defendants.

# BACKGROUND

The background for this case stems from a harassment restraining order ("HRO") case filed by Madeline Sally Machla Lee against Strickland in Ramsey County District Court[1] (the "HRO Case"). (Doc. No. 9 ("Am. Compl.") at 7; Doc. No. 10 at 2-12.) After the HRO Case was filed, a series of events unfolded that ultimately led Strickland to file this case on May 9, 2025. (Doc. No. 1.) Strickland filed an amended complaint on July 28, 2025, with thirteen claims against nine named Defendants and six unnamed John and Jane Doe Defendants, who are unidentified employees or agents of Ramsey County District Court or the Ramsey County Sheriff's Office (the "Doe Defendants"). (Am. Compl.) Strickland's amended complaint and attached exhibits total nearly three hundred pages.[2] The Court briefly summarizes the relevant contents below.

## I.    The HRO Case Begins

On July 31, 2024, Lee filed a petition for an HRO against Strickland in Ramsey County District Court. (Am. Compl. at 7; Doc. No. 10 at 2-12.)[3] In August 2024,

---

[1]    Ramsey County District Court is sometimes referred to as the Second Judicial District of Minnesota. The Second Judicial District serves only Ramsey County. *See* Minn. Stat. § 2.722 subdiv. 1. The Court uses the terms interchangeably.

[2]    Strickland also filed several notices and declarations since filing the amended complaint. (*See* Doc. Nos. 13, 24, 53, 54, 65, 66, 78, 79, 82, 94.) The majority of these notices and declarations appear to be unauthorized attempts to supplement the amended complaint. *See* Fed. R. Civ. P. 15(a) (requiring leave of court or opposing party's consent for amendment beyond a party's first amendment as a matter of course). The Court therefore does not consider these notices or declarations.

[3]    Lee filed four amended petitions between August 8, 2024 and August 16, 2024, all containing identical accusations. (*See* Doc. No. 10 at 13-53.)

Defendants Elizabeth Clysdale and Victoria Elsmore, both Referees with the Ramsey County District Court, denied Lee's request to grant an HRO *ex parte*. (Doc. No. 10 at 5-6, 69-70). Consequently, the HRO was set for a hearing before Clysdale on September 5, 2024. (*Id.* at 54.) The HRO hearing was continued three separate times, twice by Clysdale and once by Defendant Jenese Larmouth, another Referee with the Ramsey County District Court, due to lack of personal service on Strickland. (*Id.* at 5, 55-56, 78, 81-82.)

In the petition, Lee listed an address in Concord, New Hampshire as Strickland's home address. (*Id.* at 4, 15, 26, 37, 45.) In the first continuance order, Clysdale included an updated address for Strickland in Mesa, Arizona, and ordered service to be made at the updated address. (*Id.* at 55-56.) In the second continuance order, Clysdale ordered Lee to personally serve Strickland or file an Affidavit for Alternate Service or Publication. (*Id.* at 78-79.) After that order, Lee filed an Affidavit and Request for Publication, requesting the court to allow service by publication. (*Id.* at 85.) On November 7, 2024, Elsmore and a district judge granted the request, ordering service by publication under Minn. Stat. § 609.748 subdiv. 3(b). (*Id.* at 86.) The third continuance order granted a continuance to allow service by publication to be effectuated. (*Id.* at 81-82.)

A hearing on the HRO petition was finally held on December 12, 2024, before Clysdale. (*Id.* at 88-91.) Clysdale granted the HRO for a term of two years. (*Id.*) A

district judge signed off on the HRO later that day.[4]  (*Id.* at 92-95.)  The HRO remains in effect.  (*See id.*)  Strickland alleges that the HRO was issued without proper service. (Am. Compl. at 10-11.)

## II.    February 2025:  Reported HRO Violation

On February 3, 2025, Lee reported that Strickland was violating the HRO.  (Doc. No. 10 at 97, 99.)  Defendant Corina Loya, a Deputy Sheriff at the Ramsey County Sheriff's Office, responded to the report.  (*Id.*)  As part of the response, Loya contacted Strickland.  (*Id.* at 99.)  During the conversation, Loya asked for Strickland's updated address, which she provided.  (*See id.* at 99-100; Am. Compl. at 12.)  In the police report, Loya wrote that she informed Strickland that an HRO had been granted and advised Strickland to contact the Court Administrator about it.  (Doc. No. 10 at 99-100.) Strickland alleges that those statements are false.  (Am. Compl. at 12.)

On February 4, 2025, allegedly at the direction of another Deputy Sheriff, Plaintiff reached out to Bridges to Safety, a victim advocacy group.  (*Id.*)  She alleges that she spoke over the phone with a woman named Nikki who was openly hostile and dismissive of her claims.  (*Id.*)  When Strickland asked to speak with someone else, Nikki allegedly placed Strickland on hold then never transferred her call.[5]  (*Id.*)

---

[4]    Strickland labels a copy of the HRO order that was signed by the district judge as an "altered order."  (Doc. No. 10 at 92.)  Nothing about the order appears to be altered. The only difference is that the district judge added their signature.  (*See id.* at 92-95.)

[5]    Strickland seems to later allege that this "Nikki" is Defendant Nicole Rueger.  (*See* Am. Compl. at 19.)  Strickland also attached a letter from Bridges to Safety that claims they were not open on the day Strickland says she called and that no one named Nikki worked there.  (*See* Doc. No. 10 at 188.)  Strickland alleges that this is "part of a broader

After providing her updated address to Loya, Strickland was formally served with the HRO on February 27, 2025. (*Id.* at 13; Doc. No. 10 at 102.) Strickland alleges that she called Loya after being served and Loya told her to "read the order and get a lawyer." (Am. Compl. at 13.)

### III.    March 2025:  Strickland's Motion to Rescind and New Cases

On March 6, 2025, Strickland filed a motion to rescind the HRO. (*Id.* at 13-14.) Defendant Rebecca Rossow, another Referee with the Ramsey County District Court, denied that motion as untimely on April 11, 2025. (Doc. No. 10 at 130-33.)

Also on March 6, 2025, Strickland filed two new cases against Lee in Ramsey County District Court:  a small claims action for defamation and harassment, and a petition for an HRO. (Am. Compl. at 14.) That same day, Strickland's husband filed "a nearly identical HRO petition against Lee." (*Id.*) Strickland alleges that neither of her cases were docketed, assigned, or scheduled for review, but that her husband's case was immediately granted ex parte and scheduled for a hearing. (*Id.*) She also alleges that her husband was granted a fee waiver, even though he did not request one or qualify for one, but that Ramsey County District Court did not apply the same waiver to her case. (*See id.* at 14-15.)

### IV.    April through July 2025:  Other Alleged Procedural Violations

Plaintiff alleges many other procedural violations and discriminatory acts. (*See id.* at 15-26.) She makes several allegations against Defendant Nicole Rueger, a Judicial

institutional attempt to disavow involvement and obscure internal misconduct." (Am. Compl. at 19.)

Court Operations Supervisor at the Ramsey County District Court.  (*Id.* at 6.)  First, she alleges that in April 2025, a staff member named Nikki mocked her and denied her "procedural access."  (*Id.* at 16.)  She says that Nikki was "likely" Rueger.  (*Id.*)  Strickland alleges that when she tried to file a complaint against "Nikki," she was told that no such person worked there.  (*Id.*)  She also alleges that Rueger (1) failed to include an index, inventory, or legal explanation of documents provided to Strickland in response to an April 2025 records request, and (2) interfered in her filings by telling her that a filing had been submitted incorrectly.  (*Id.* at 17.)  She alleges a similar failure by Rueger in response to a July 2025 records request.  (*Id.* at 23-24.)

She also alleges that she submitted a formal request for accommodations under the Americans with Disabilities Act ("ADA") in April 2025.  (*Id.* at 18.)  Specifically, she requested that all non-essential communication be sent via email, rather than by telephone.  (*Id.*)  She alleges that a district judge responded to the request by telling her they refused to communicate with her via email and that any complaint must be submitted as a formal pleading.  (*Id.* at 19; *see* Doc. No. 10 at 187.)  Also around this time, Plaintiff alleges that several of her non-ADA-related requests for relief were denied. (Am. Compl. at 19-20.)

On May 12, 2025, Defendant Kyle Manderfeld filed a notice of appearance in the HRO Case.  (*Id.* at 21.)  Manderfeld is an attorney with Defendant Barna, Guzy & Steffen, Ltd. ("BGS").  (*Id.* at 6.)  He was previously employed by the Ramsey County Attorney's Office.  (*Id.* at 5.)  BGS is a private law firm headquartered in Minnesota. (*Id.*)  After the notice of appearance was filed, Strickland reached out to Manderfeld to

express her concern that he had a conflict of interest.  (*Id.* at 22.)  Strickland alleges that
Manderfeld "deflected" by referring to Ramsey County as a geographical unit rather than
a government entity.  (*Id.*)  Strickland allegedly raised the issue with a senior attorney at
BGS as well, who did not acknowledge the alleged conflict.  (*Id.*)

On May 23, 2025, Larmouth presided over a contested hearing on Strickland's
motion to vacate the HRO.  (*Id.*)  Strickland alleges that Larmouth did not acknowledge
her concerns about service and the ADA, and that "it became clear that Referee Larmouth
had played a significant role in the prior procedural events."  (*Id.* at 23.)

## V.    This Case

Strickland filed her original complaint on May 9, 2025.  (Doc. No. 1.)  She
simultaneously moved for a preliminary injunction (1) vacating the HRO; (2) requiring
Ramsey County District Court to hold a hearing in one of her cases; (3) prohibiting
further disclosure of her address; and (4) requiring ADA accommodations.  (Doc. No. 3.)

On July 28, 2025, Strickland filed an amended complaint with thirteen claims:
(1) municipal liability under *Monell*[6] against Defendant Ramsey County; (2) procedural
due process violation against all Defendants; (3) denial of access to courts against all
Defendants; (4) color of law misconduct against all Defendants; (5) violation of Title II of
the ADA against all Defendants; (6) violation of the Equal Protection Clause against all
Defendants; (7) retaliation and interference with ADA rights against all Defendants;

---

[6]    *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

(8) violation of the Rehabilitation Act against Ramsey County[7]; (9) conspiracy to violate civil rights against the Individual-Capacity Defendants[8]; (10) abuse of process against the Individual-Capacity Defendants; (11) violation of Minnesota Constitution Article I §§ 3, 6, 8, and 10 against all Defendants; (12) intentional infliction of emotional distress against the Individual-Capacity Defendants; and (13) false light and state-enabled defamation against Ramsey County.[9]  (Am. Compl. 32-72.)  As relief for these claims, Strickland asks the Court to vacate the HRO, order Ramsey County District Court officials to perform certain actions and enact certain policies, award compensatory damages, award punitive damages, and award attorney's fees and costs.  (*Id.* at 72-76.)

Four separate motions to dismiss are pending before the Court.  The first was filed by Clysdale, Elsmore, Larmouth, Rossow (collectively "Referee Defendants"), and Rueger (collectively with Referee Defendants, "Judiciary Defendants").  (Doc. No. 18.) The second was filed by Loya and Ramsey County (collectively, "Ramsey County Defendants").  (Doc. No. 27.)  The third was filed by BGS.  (Doc. No. 34.)  The fourth was filed by Manderfeld.  (Doc. No. 36.)  While these motions were being briefed and

---

[7]    Strickland labeled this count as "Against Ramsey County and All Public Entity Defendants."  (Am. Compl. at 55.)  The only "public entity" defendant in this case is Ramsey County.

[8]    The "Individual Capacity Defendants" are Rueger, Clysdale, Larmouth, Rossow, Elsmore, Manderfeld, and the Doe Defendants.  (Am. Compl. at 1.)

[9]    Strickland labeled this count as "Against Ramsey County and Supervisory Officials."  (Am. Compl. at 69.)  After further reviewing the allegations contained in Count XIII, the identity of the "supervisory officials" is unclear.  Accordingly, the Court only addresses Count XIII as to Ramsey County.

considered by the Court, Strickland filed numerous self-styled "notices" and motions, which are also before the Court. (*See* Doc. Nos. 13, 24, 65, 72, 74, 78, 82, 93, 98.)

## DISCUSSION

Defendants raise a variety of challenges in their motions to dismiss, including challenges to the Court's subject matter jurisdiction under Rule 12(b)(1), improper service of process under Rule 12(b)(5), and failure to state a claim under Rule 12(b)(6). The Court first addresses Defendants' subject matter jurisdiction challenge, then addresses the challenges under Rule 12(b)(6). *See Oglala Sioux Tribe v. Fleming*, 904 F.3d 603, 609 (8th Cir. 2018) ("[W]e have an independent obligation to determine whether subject-matter jurisdiction exists before proceeding to the merits, even when no party raises the issue.")

## I.    Subject Matter Jurisdiction

A party may challenge a court's subject matter jurisdiction under Rule 12(b)(1). Fed. R. Civ. P. 12(b)(1). The party invoking federal jurisdiction has the burden of proving jurisdiction by a preponderance of the evidence. *V S Ltd. P'ship v. Dep't of Hous. & Urb. Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000). A Rule 12(b)(1) motion may challenge a plaintiff's complaint either facially or factually. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). On a factual attack, a court may consider matters outside the pleadings to determine whether it has subject matter jurisdiction. *Id.* Defendants raise a facial attack to the Court's subject matter jurisdiction under two doctrines: *Rooker-Feldman* doctrine and *Younger* abstention doctrine.

A.   *Rooker-Feldman* **Doctrine**

Under the *Rooker-Feldman* doctrine, lower federal courts lack subject matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine is confined to situations "where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." *Lance v. Dennis*, 546 U.S. 459, 466 (2006) (per curiam). Not all claims that challenge a legal conclusion in a state court judgment qualify under this doctrine. *Exxon Mobil*, 544 U.S. at 293. The claim must also seek relief from the state court's judgment. *Hageman v. Barton*, 817 F.3d 611, 615 (8th Cir. 2016).

To determine whether a claim qualifies, a court looks to the nature of the claim or alleged injury and the kind of relief the plaintiff seeks. *See id.* at 614 ("The boundaries for application of the doctrine depend upon the nature of the federal claims and whether the plaintiff in federal court, in fact, seeks relief from the state court judgment."). For example, in *Kvalvog v. Park Christian School, Inc.*, the lower court had jurisdiction because the plaintiffs' claims did not seek relief from a state court judgment but instead "request[ed] relief for the Defendants' allegedly illegal acts and omissions during the proceedings." 66 F.4th 1147, 1152 (8th Cir. 2023). In contrast, in *Skit International, Ltd. v. DAC Technologies of Arkansas, Inc.*, the lower court did not have jurisdiction because the plaintiff's alleged injury stemmed directly from the state court judgment, not from some separate conduct, as the plaintiff sought to have the state court's judgment

10

declared null and void for lack of service of process and lack of jurisdiction. 487 F.3d
1154, 1156-57 (8th Cir. 2007).

Most of Strickland's claims pass this jurisdictional hurdle. Strickland generally
seeks relief for allegedly wrongful acts while the HRO Case and her other state court
proceedings were pending. Most of her claims indirectly challenge the state court's
conclusions and do not ask for direct relief from the state court's judgments. However,
two of her claims seek direct relief from the HRO and other state court decisions.
Count II alleges that the HRO was issued without proper service or notice and that
Defendants committed other procedural due process violations in the course of the HRO
Case. (Am. Compl. at 36-38.) She requests an order vacating the HRO, other injunctive
relief, and damages. Count III alleges that Judiciary Defendants or other court employees
improperly rejected certain filings and asks for an order directing Defendants to docket
and review certain filings, as well as other injunctive relief and damages. (*Id.* at 39-41.)
These two claims are barred by the *Rooker-Feldman* doctrine. The Court dismisses
Counts II and III without prejudice.

### B.    *Younger* Abstention Doctrine

Under the *Younger* abstention doctrine, "federal courts should abstain from
exercising jurisdiction when (1) there is an ongoing state proceeding, (2) which
implicates important state interests, and (3) there is an adequate opportunity to raise any
relevant federal questions in the state proceeding." *Plouffe v. Ligon*, 606 F.3d 890, 892
(8th Cir. 2010). The *Younger* doctrine was initially developed from the well-established
principle "that concepts of comity and federalism require federal courts to abstain from

interfering with pending state court criminal proceedings, except under special circumstances." *Wassef v. Tibben*, 68 F.4th 1083, 1086 (8th Cir. 2023) (citation modified). The doctrine has been extended to two kinds of civil cases: (1) "civil enforcement proceedings," and (2) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *New Orleans Pub. Serv., Inc. v. Council of New Orleans* (*NOPSI*), 491 U.S. 350, 367-68 (1989). "Civil enforcement proceedings" refers to state proceedings that are "akin to a criminal prosecution." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79 (2013). Typically, those proceedings are initiated by a state actor to sanction the federal plaintiff. *See id.*

Although there are ongoing state proceedings that relate to this case, the *Younger* doctrine does not require the Court to abstain here. Defendants did not show that the underlying state civil cases fall into one of the narrow *NOPSI* categories. (*See* Doc. No. 21 at 19-20; Doc. No. 39 at 8; Doc. No. 41 at 8.) Instead, Defendants pointed to other cases from this District where the court applied the *Younger* doctrine because there were underlying *criminal* proceedings relating to the *violation* of an HRO. (*See* Doc. No. 21 at 19-20.) Here, the underlying state cases are not criminal in nature and do not fit into the narrow civil categories. The HRO Case was initiated by Lee, a private actor, and does not involve a state party whatsoever. The same is true for the other civil cases filed by Strickland. Defendants did not advance an argument about the state courts' ability to perform their judicial functions, and it is unclear to the Court how proceeding to hear this case could implicate Minnesota courts' ability to perform their judicial

functions.  Accordingly, after the above dismissal under the *Rooker-Feldman* doctrine,

Counts I and IV through XIII remain.

## II.    Failure to State a Claim

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in

the complaint to be true and construes all reasonable inferences from those facts in the

light most favorable to the complainant.  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir.

1986).  In doing so, however, a court need not accept as true wholly conclusory

allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999),

or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of

Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court may consider the complaint,

matters of public record, orders, materials embraced by the complaint, and exhibits

attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6).  *Porous

Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a

claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  Although a complaint need not contain "detailed factual allegations," it must

contain facts with enough specificity "to raise a right to relief above the speculative

level." *Id.* at 555.  As the Supreme Court reiterated, "[t]hreadbare recitals of the elements

of a cause of action, supported by mere conclusory statements," will not pass muster

under *Twombly*.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S.

at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation

that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

Generally, courts must construe *pro se* complaints liberally; however, the complaint "still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). A complaint must also identify how each defendant was involved in the allegedly wrongful conduct. *See* Fed. R. Civ. P. 8(a)(2); *Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999).

The Court first addresses Judiciary Defendants' assertion of judicial immunity. After finding that Judiciary Defendants are entitled to absolute immunity on all claims against them, the Court analyzes each of the remaining counts as to all other Defendants. The Court finds that even when liberally construing Strickland's claims, they fail to state a claim upon which relief can be granted and must be dismissed with prejudice.[10]

### A.    Judicial Immunity

Counts IV through VII and IX through XII remain against Judiciary Defendants. These Defendants argue that they are immune from suit under the doctrine of judicial immunity. It is well-established that judges are absolutely immune from civil lawsuits alleging misconduct during the performance of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (per curiam). Judicial "immunity applies even when the judge is accused of acting maliciously and corruptly." *Pierson v. Ray*, 386 U.S. 547, 554 (1967). There are only two situations where judicial immunity can be overcome: (1) when a judge is sued based on nonjudicial actions; and (2) when the judge acted in the

---

[10]    Ramsey County Defendants, BGS, and Manderfeld also move to dismiss under Rule 12(b)(5) for insufficient service of process. (Doc. No. 30 at 9-10; Doc. No. 39 at 8-10; Doc. No. 41 at 8-10.) The Court does not reach this issue because it finds dismissal with prejudice is appropriate under Rule 12(b)(6) for failure to state a claim.

complete absence of jurisdiction. *Mireles*, 502 U.S. at 11-12. The second situation refers broadly to a court's subject matter jurisdiction. *See Rockett ex rel. K.R. v. Eighmy*, 71 F.4th 665, 673 (8th Cir. 2023) ("Subject-matter jurisdiction is what counts in these types of cases.").

Judicial immunity has been extended to other judicial officers, such as court-appointed referees and court clerks, where "their judgments are functionally comparable to those of judges—that is, because they, too, exercise a discretionary judgment as part of their function." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993) (citation modified); *see Hamilton v. City of Hayti*, 948 F.3d 921, 928 (8th Cir. 2020) (court clerks); *Cassell v. County of Ramsey*, No. 15-cv-2598, 2015 WL 9590802, at *4 (D. Minn. Dec. 11, 2015) (court-appointed referees), *report and recommendation adopted by*, No. 15-cv-2598, 2015 WL 9581806 (D. Minn. Dec. 30, 2015). As to court clerks specifically, the Eighth Circuit has held that they are entitled to absolute immunity for "acts that are discretionary, taken at the direction of a judge, or taken according to court rules." *Hamilton*, 948 F.3d at 928.

Judiciary Defendants are entitled to absolute immunity on all claims against them. Strickland's claims against Referee Defendants only pertain to their performance of their judicial duties as court-appointed referees. *See generally Smith v. Anderson*, No. 25-cv-700, 2025 WL 2260193, at *3-4 (D. Minn. May 12, 2025) (discussing functions typically within a judge's ordinary functions). Additionally, it is clear that Referee Defendants acted within their jurisdiction, as Minnesota district courts are courts of general jurisdiction. Minn. Stat. §§ 484.01 subdiv. 1, 609.748 subdiv. 2(a); *see also Scheffler v.*

*Trachy*, 821 F. App'x 648, 652 & n.8 (8th Cir. 2020) (finding that a Minnesota referee was entitled to absolute judicial immunity because Minnesota district courts are courts of general jurisdiction). While Plaintiff may disagree with the conclusion that adequate notice was given (*see* Doc. No. 52 at 14), this does not mean that Referee Defendants acted in complete absence of jurisdiction.

Strickland's claims against Rueger only pertain to acts that were discretionary, taken at the direction of a judge, or taken according to court rules. (*See, e.g.*, Am. Compl. at 17 (referring to Rueger's actions as discretionary); Doc. No. 10 at 142 (referencing Minnesota Rules of Public Access).) Strickland has not alleged any actions that fall outside the scope of judicial immunity, therefore, all claims against Judiciary Defendants are dismissed with prejudice.

### B.    Count I:  *Monell* Claim Against Ramsey County

Count I alleges *Monell* liability against "Ramsey County, acting through its court administration, judicial officers, ADA liaisons, and clerical staff," based on systematic obstruction and weaponization of court rules, among other actions by court employees. (Am. Compl. at 32-33.) Strickland seeks an injunction on future unsigned court orders and damages. (*Id.* at 36.) "*Monell* liability exists 'only where the municipality *itself* causes the constitutional violation at issue.'" *Partridge v. City of Benton*, 157 F.4th 970, 973 (8th Cir. 2025) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

Ramsey County cannot be held liable for the actions of Judiciary Defendants or other employees of the Second Judicial District. Judiciary Defendants and other court staff are employees of the state, not Ramsey County. *See* Minn. Stat. § 480.181

subdiv. 1; *Cassell v. County of Ramsey*, No. 10-cv-4981, 2011 WL 7561261, at \*5

(D. Minn. Nov. 2, 2011), *report and recommendation adopted by*, No. 10-cv-4981, 2012

WL 928242 (D. Minn. Mar. 19, 2012), *aff'd*, 490 F. App'x 842 (8th Cir. 2012); *see also*

*Slaven v. Engstrom*, 710 F.3d 772, 781 (8th Cir. 2013) (finding that Hennepin County

could not be held liable for alleged constitutional violations caused by a state court

judge's application of Minnesota law).  The allegations contained in Count I only allege

wrongdoing by court employees, not county employees.  As addressed more fully below,

the only specific allegations of wrongdoing against a county employee in the amended

complaint are those against Loya, but Strickland failed to allege the violation of any of

her constitutional or statutory rights.  Without any allegation of a constitutional or

statutory violation by a *county* employee, there is nothing for Ramsey County to be held

liable for under *Monell*.  This claim is dismissed with prejudice.

To the extent that Strickland attempts to bring this claim against BGS and

Manderfeld by briefly mentioning "Private Actor Liability under Color of Law," the

claim also fails.  A *Monell* claim may be brought against private person if their action

"may be fairly treated as that of the municipality itself."  *Rickmyer v. Browne*, 995 F.

Supp. 2d 989, 1030 (D. Minn. 2014) (quoting *Reinhart v. City of Brookings*, 84 F.3d

1071, 1073 (8th Cir. 1996)).  Strickland has not alleged any facts that suggest Manderfeld

and BGS's actions may be fairly treated as actions by a municipality.

### C.    Count IV:  Color of Law Misconduct Against All Defendants

Count IV alleges misconduct "in issuing, enforcing, and refusing to correct" the

HRO and requests declaratory relief and damages.  (Am. Compl. at 42-45.)  "To state a

17

claim under § 1983, a plaintiff must allege the violation of a right secured by the

Constitution and laws of the United States, and must show that the alleged deprivation

was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42,

48 (1988). "Color of law misconduct" is not a legal wrong on its own. A plaintiff must

allege the violation of some constitutional or statutory right. It appears Strickland may

refer to her due process rights under the Fourteenth Amendment on this claim, similar to

her claims under Count II. (*See* Am. Compl. at 42.)

Even if two stray references to the Fourteenth Amendment are sufficient to allege

the violation of a right secured by the Constitution, Strickland still fails to state a claim.

Again, the allegations primarily focus on Judiciary Defendants or other court employees,

not county employees. Ramsey County cannot be held liable for this conduct. Loya's

conduct is not mentioned whatsoever in relation to this claim, so she cannot be held liable

for it.

As to BGS and Manderfeld, Strickland alleges that Manderfeld's participation as

opposing counsel in the HRO Case and failure to disclose his prior employment make

him liable and BGS's failure to take "corrective action" means it ratified Manderfeld's

actions and is responsible for his behavior. (*Id.* at 44.) A private actor can be liable under

§ 1983 only "when the private actor is a willful participant in joint activity with the State

or its agents in denying a plaintiff's constitutional rights." *Dossett v. First State Bank*,

399 F.3d 940, 947 (8th Cir. 2005) (citation modified). Strickland's allegations about joint

activity between the state and Manderfeld and BGS are insufficient. Participating in a

lawsuit as opposing counsel is not enough to show a conspiracy between that lawyer and

18

the court.  Strickland suggests that it is enough here because Manderfeld previously worked for the Ramsey County Attorney's Office.  Strickland fails to allege how Manderfeld's previous employment had any impact on the case, especially because he was previously a county employee, not an employee of the court.  Her other allegations of conspiracy are too conclusory.  BGS and Manderfeld cannot be held liable as private actors.  This claim is dismissed with prejudice.

### D.    Count V:  Violation of ADA Title II Against All Defendants

Count V alleges a violation of ADA Title II for failure to provide reasonable accommodations related to court proceedings.  (Am. Compl. at 45-46.)  Strickland seeks declaratory and injunctive relief as well as damages.  (*Id.* at 48.)  All the allegations of misconduct under this claim involve actions taken by court employees.  (*See id.* at 45-48.)  As explained above, Ramsey County and the other remaining Defendants cannot be held liable for the conduct of Judiciary Defendants or other court employees.  Strickland has failed to allege any violation of the ADA by the remaining Defendants.  This claim is dismissed with prejudice.

### E.    Count VI:  Violation of Equal Protection Against All Defendants

Count VI alleges a pattern of disparate treatment of identical filings based on Strickland's disabilities and requests declaratory judgment and damages.  (*Id.* at 48-51.)  Again, Strickland only alleges misconduct by Judiciary Defendants and other court employees.  She does not make any allegations of misconduct specifically against Ramsey County, Loya, BGS, or Manderfeld.  Accordingly, this claim is dismissed with prejudice.

**F.    Count VII:  Retaliation and Interference with ADA Rights Against All Defendants**

Count VII alleges retaliation under the ADA and requests damages and injunctive relief requiring ADA compliance.  (*Id.* at 51-55.)  Again, her allegations primarily pertain to Judiciary Defendants or other court employees.  However, she does make a few specific allegations against Manderfeld regarding his alleged failure to disclose "prior government employment, despite actual knowledge of systemic ADA and procedural violations," when he filed a notice of appearance in the HRO Case.  (*Id.* at 53.)  First, Strickland cites no authority to suggest that Manderfeld had an obligation to disclose his prior employment.  Second, it is unclear to the Court how such failure to disclose could constitute retaliation or any other kind of claim under the ADA.  This claim is dismissed with prejudice.

**G.    Count VIII:  Violation of the Rehabilitation Act Against Ramsey County**

Count VIII alleges discriminatory exclusion because Strickland's filings were ignored, returned, dismissed, or denied and requests injunctive relief for systemic reforms and compensatory damages.  (*Id.* at 55-58.)  Again, this Count only focuses on conduct by Judiciary Defendants or court employees.  Ramsey County cannot be held liable for the conduct of court employees because they are state employees.  Strickland has failed to allege any misconduct by Ramsey County employees under the Rehabilitation Act.  Therefore, this claim is dismissed with prejudice.

**H.**    **Count IX:  Conspiracy to Violate Civil Rights Against Individual-Capacity Defendants**

Count IX alleges a conspiracy involving the issuance of the HRO, certain docketing or filing policies, and denial of ADA accommodations.  (*Id.* at 59.)  She seeks damages and injunctive relief prohibiting further retaliation or obstruction.  (*Id.* at 61.)  The only Individual-Capacity Defendants remaining are Manderfeld and the Doe Defendants.[11]  Strickland makes a few specific allegations against Manderfeld on this count.  She alleges that Manderfeld coordinated with "the opposing party" to file a retaliatory motion on May 8, 2025, and that his actions, along with the other Defendants' actions, were motived by "class-based animus toward Plaintiff's disability status, cognitive profile, and pro se identity."  (*Id.*)

To start, Manderfeld did not file a motion in the HRO Case on May 8, 2025.  It appears the motion Strickland refers to was filed *pro se* by Lee, and it was attached as an exhibit to her amended complaint.  (*See id.* at 21; Doc. No. 10 at 158-60.)  Moreover, Strickland alleges that Manderfeld coordinated with "the opposing party," who would be Lee in the HRO Case, not any court employee.  All other allegations of a conspiracy between Manderfeld and state or county officials are conclusory.  This claim is dismissed with prejudice.

---

[11]    The Court addresses all claims as to the Doe Defendants below.

## I.    Count X:  Abuse of Process Against All Individual-Capacity Defendants

Count X complains about the issuance of the HRO, Defendants' decisions regarding her challenge to the HRO, and misuse of a protective order statute, but only seeks damages and declaratory relief.  (Am. Compl. at 62-64.)  Again, the only Individual-Capacity Defendants remaining are Manderfeld and the Doe Defendants.  And again, Strickland alleges that Manderfeld committed abuse of process by filing the May 8, 2025 motion "that labeled Plaintiff's civil rights lawsuit a 'violent threat'—to poison the judicial record and suppress legitimate advocacy."  (*Id.* at 63.)

To make a claim for abuse of process under Minnesota common law,[12] a plaintiff must show "(a) the existence of an ulterior purpose, and (b) the act of using the process to accomplish a result not within the scope of the proceedings in which it was issued, whether such result might otherwise be lawfully obtained or not."  *Duerscherl v. Foley,* 681 F. Supp. 1364, 1369 (D. Minn. 1987).  Strickland has not alleged either of these elements against Manderfeld.  This claim is dismissed with prejudice.

## J.    Count XI:  Violation of Minnesota Constitution Article I, §§ 3, 6, 8, and 10 Against All Defendants

Count XI alleges violations of four sections of the Minnesota Constitution.  (*Id.* at 64-66.)  Strickland requests declaratory and future injunctive relief, as well as damages.  (*Id.* at 66.)  "There is no private cause of action for violations of the Minnesota

---

[12]    Strickland also claims abuse of process under 42 U.S.C. § 1983.  (*Id.* at 62.)  It is unclear what federal statutory or constitutional right Strickland seeks to vindicate by alleging a violation of § 1983 for abuse of process.  Accordingly, the Court only analyzes this count under Minnesota common law.

Constitution." *Eggenberger v. W. Albany Twp.*, 820 F.3d 938, 941 (8th Cir. 2016) (citation modified).  This claim is dismissed with prejudice.

### K.    Count XII:  Intentional Infliction of Emotional Distress Against Individual-Capacity Defendants

Count XII alleges that Defendants' conduct was extreme and outrageous and caused severe emotional distress.  (Am. Compl. at 67-68.)  Strickland requests damages. (*Id.* at 69.)  Again, Strickland's allegations are general and only involve court employees. (*See id.* at 67-69.)  Strickland does not make any allegations specific to Manderfeld or the Doe Defendants.  This claim is dismissed with prejudice.

### L.    Count XIII:  False Light and State-Enabled Defamation Against Ramsey County

Count XIII alleges Ramsey County perpetuated false and defamatory statements by issuing and maintaining the HRO, which caused reputational and economic harm.  (*Id.* at 70-71.)  Strickland specifically requests damages.  (*Id.* at 72.)  Again, all allegations pertain to Judiciary Defendants or other court employees, not county employees.  Ramsey County cannot be liable for any of the allegations.  *See* Minn. Stat. §§ 466.01 subdiv. 1, 466.02.  This claim is dismissed with prejudice.

### M.    Remaining Allegations

As Strickland is *pro se*, the Court is required to construe her complaint liberally. Construing the amended complaint liberally, the only other possible wrong alleged in the complaint is Loya's disclosure of Strickland's address to court employees and inclusion of false information in her February 3rd report.  To the extent that either of these bare allegations could constitute an independent claim, Loya is entitled to qualified immunity.

The doctrine of qualified immunity protects state actors from civil liability for their discretionary acts when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The defense provides "ample room for mistaken judgments" as it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986). To overcome qualified immunity, a plaintiff must show that: (1) the officer "violated a federal statutory or constitutional right"; and (2) the right was clearly established at the time of the violation. *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018). The Court has discretion to decide which prong to consider first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

First, there is no reasonable expectation of privacy in one's home address. *See Kennedy v. City of Braham*, 67 F. Supp. 3d 1020, 1032-34 (8th Cir. 2014). Accordingly, disclosure of a person's address does not violate that person's constitutional rights. Strickland provided no other theory of how disclosure of her address violates a federal statute or the Constitution. Second, including false information in a police report only creates a right of action under § 1983 when that inclusion later results in a deprivation of constitutional rights. *See Lawrence v. City of St. Paul*, 740 F. Supp. 2d 1026, 1038-39 (D. Minn. 2010) Strickland does not allege any violation of her rights or harm resulting from Loya's alleged inclusion of false information in her February 3rd report. Additionally, because Strickland has not alleged that Loya violated her constitutional rights, Ramsey County could not be held liable on a *Monell* claim. *See Webb v. City of Maplewood*, 889 F.3d 483, 487 (8th Cir. 2018).

### N.    Doe Defendants

The Doe Defendants are defined as "unidentified employees or agents of the Minnesota Second Judicial District and/or the Ramsey County Sheriff's Office." (Am. Compl. at 7.) Although the Doe Defendants are not directly represented in this action, due to their lack of identity, the Court finds it appropriate to dismiss the claims against them as well. It is permissible to name fictitious parties as defendants "if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery." *Estate of Rosenberg ex rel. Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). Otherwise, the use of fictitious parties is not allowed in a complaint, as it would be "simple enough for plaintiff to add them by amendment, after properly securing leave of court." *Id.*

Here, Strickland did not include specific allegations against any of the six Doe Defendants. Rather, she seems to include them as placeholders in case other individuals are discovered during discovery. She generally describes the actions of the Doe Defendants as "participating in, enabling, or failing to prevent the constitutional and statutory violations described herein." (Am. Compl. at 7.) That description could cover a wide range of individuals. There is no specific conduct that would allow a specific person to be identified after reasonable discovery. Accordingly, the claims are properly dismissed as to the Doe Defendants as well.

### III.    Dismissal with Prejudice

As a final matter, the Court addresses its decision to dismiss Counts I and IV through XIII with prejudice. Generally, dismissal under Rule 12(b)(6) is without

prejudice unless there have been persistent pleading failures, the claims cannot be conceivably repleaded with success, or repleading would be futile. *See Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*, 559 F.3d 772, 782 (8th Cir. 2009); *Michaelis v. Neb. State Bar Ass'n*, 717 F.2d 437, 438-39 (8th Cir. 1983). Additionally, when a case is dismissed because the defendant is entitled to qualified or judicial immunity, dismissal should be with prejudice. *See, e.g.*, *Trendle v. Campbell*, 465 F. App'x 584, 585 (8th Cir. 2012) (dismissing with prejudice because defendant was entitled to qualified immunity); *Scheffler*, 821 F. App'x at 649 (dismissing with prejudice on basis of judicial immunity).

Here, Strickland is on her second complaint but still fails to address significant pleading deficiencies. Additionally, the claims are primarily dismissed based on government officials' entitlement to immunity and Strickland's misunderstanding of what parties can be held liable under certain laws. Strickland's failures go beyond small pleading deficiencies. She had a second opportunity to improve her claims and indeed provided a lengthy amended complaint and attached over two hundred pages of exhibits. Despite this, she still fails to come close to alleging claims that could survive a motion to dismiss. Dismissal with prejudice is the appropriate remedy here.

## CONCLUSION

Strickland brought thirteen claims against nine named and six unnamed Defendants. Counts II and III are barred under the *Rooker-Feldman* doctrine. Those two counts are dismissed without prejudice because they are dismissed for lack of subject matter jurisdiction. Counts I and IV through XIII are dismissed for failure to state a claim. Those eleven counts are dismissed with prejudice.

## ORDER

Based upon the foregoing and the record in this case, **IT IS HEREBY**

**ORDERED** that:

1.      Defendants Elizabeth Clysdale, Victoria Elsmore, Jenese Larmouth,

Rebecca Rossow, and Nicole Rueger's motion to dismiss (Doc. No. [18]) is **GRANTED**.

2.      Defendants Corina Loya and Ramsey County's motion to dismiss (Doc.

No. [27]) is **GRANTED**.

3.      Defendant Barna, Guzy & Steffen, Ltd.'s motion to dismiss (Doc. No. [34])

is **GRANTED**.

4.      Defendant Kyle Manderfeld's motion to dismiss (Doc. No. [36]) is

**GRANTED**.

5.      Counts II and III (Doc. No. [9]) are **DISMISSED WITHOUT**

**PREJUDICE**.

6.      Counts I and IV through XIII (Doc. No. [9]) are **DISMISSED WITH**

**PREJUDICE**.

7.      All other pending motions (Doc. Nos. [3], [72], [93], [98]) are **DENIED**

**AS MOOT**.

        **LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  March 4, 2026                    s/Donovan W. Frank
                                         DONOVAN W. FRANK
                                         United States District Judge

27